UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

EDDIE LEE SKELLETT,

        Plaintiff,

v.

HEIDI WASHINGTON et al.,

        Defendants.
_____/

Case No. 1:19-cv-703

Honorable Paul L. Maloney

## **OPINION**

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983 and the Americans with Disabilities Act, 42 U.S.C. § 12132. Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's § 1983 claims against Defendants Washington, Rewerts, Gonzalez, Winger, Becher, and the unknown Director of Bureau of Healthcare Services (Unknown Party). The Court also will dismiss Plaintiff's individual-capacity ADA claims against all Defendants and Plaintiff's official-capacity ADA claims against Defendants Rewerts, Gonzalez, Winger, Becher, Holmes and the unknown Director of Bureau of Healthcare Services (Unknown Party).

**I.     Factual Allegations**

Plaintiff presently is incarcerated with the Michigan Department of Corrections (MDOC) at the Carson City Correctional Facility (DRF) in Carson City, Montcalm County, Michigan. The events about which he complains occurred at that facility. Plaintiff sues MDOC Director Heidi Washington and the unknown Director of the Bureau of Healthcare Services (Unknown Party), together with the following officials employed at DRF: Warden Randee Rewerts; ADA Coordinator D. Gonzales; Deputy Warden J. Winger; Medical Provider Scott Holmes; and Grievance Coordinator L. Becher.

Plaintiff alleges that he has numerous serious health conditions, which were diagnosed before he was convicted and sentenced to prison in 2018. According to the complaint, Plaintiff is a disabled veteran, who was placed on standing, sitting, walking, stair-climbing, and lifting restrictions in the early 2000s by Dr. Jennifer Tuney. Tests also revealed that Plaintiff had inner ear damage, leading to bouts of vertigo. In addition, Plaintiff has no feeling in his right foot and a portion of his right leg, osteoarthritic growths in his joints, left-ventricle heart issues, high blood pressure, and breathing issues and spots on his lungs, possibly due to mesothelioma from asbestos exposure. In 2013, Plaintiff suffered an accident in which he lost his right thumb and partial function in his right hand. Although the thumb was reattached, Plaintiff lost his grip strength and could no longer pass his fitness examination to drive semi-trucks. Plaintiff was placed on 70% disability from the Veterans Administration and full disability from Social Security.

Plaintiff was arrested in 2017, and the Monroe County Jail permitted him to use leg braces and a cane, as prescribed. When Plaintiff arrived at the Charles Egeler Reception and Guidance Center (RGC), his braces and cane were returned with the deputy sheriff. Plaintiff was required to work and attend other programing. Plaintiff complained to Dr. Howard at RGC, requesting medical assistance and accommodation under the ADA. Dr. Howard ordered a copy of

Plaintiff's medical records and subsequently began treatment. Before Plaintiff was transferred to DRF, Dr. Howard issued the following medical detail orders: a no-steps detail (assignment to a ground-floor cell); an extra-pillow detail, to elevate Plaintiff's legs when lying down; compression hose for both legs; and a cotton-blanket detail, because of Plaintiff's allergy to wool. (Ex. C to Compl., ECF No. 5-2, PageID.111.)

When Plaintiff arrived at DRF, he informed health care of his disabilities and requested leg braces and a cane. When he received no assistance, he sent multiple kites. Defendant Dr. Holmes saw Plaintiff in response to some kites, but Holmes denied that Plaintiff was disabled, saying that he was just getting old. Defendant Holmes cancelled the no-stair detail, the cotton-blanket detail, and the extra-pillow detail. He also terminated Plaintiff's pain medications and reduced Plaintiff's calcium-blocking medications. Defendant Holmes also refused Plaintiff's requests for braces and a cane. Plaintiff complains the various changes to his medical accommodations and prescriptions caused him to suffer significant pain and increased his risk of falling.

On March 14, 2018, Plaintiff filed an ADA request under MDOC Policy Directive 04.06.155, which was denied by Defendant Gonzales and affirmed by Defendant Rewerts. The response explained that the issuance of medical details and special accommodations must be made by a qualified health professional under MDOC Policy Directive 04.06.160. Defendant Gonzalez informed Plaintiff that, if he was dissatisfied with his medical care and medical decisions to deny him medical details, he should file a grievance. (*See* ADA Accommodation Request/Appeal, Ex. D to Plaintiff's brief, ECF No. 5-2, PageID.122.)

Plaintiff filed a grievance on April 29, 2019, complaining about the lack of treatment and the failure to accommodate his disabilities, including the failures to provide knee

3

and back braces, a cane, insoles, and walking activities in the yard. The grievance was rejected at Step I by Grievance Coordinator Becher, and Defendant Winger reviewed and approved the rejection at Step I. Plaintiff appealed to Step II, and Defendant Rewerts upheld the Step-I rejection. Plaintiff filed an appeal to Step III, and the rejection was upheld on August 6, 2019, by Richard Russell, the former manager of the grievance section in the Office of Legal Affairs, who was designated to respond on behalf of Defendant MDOC Director Heidi Washington. Plaintiff complains that Defendants failed to follow prison policy and improperly rejected the grievance on the basis that Plaintiff failed to try to resolve the issue before filing a grievance, apparently ignoring Plaintiff's many kites on the issue.

Plaintiff sues all Defendants in both their individual and official capacities. He alleges that Defendants' actions and inactions violated the Eighth Amendment and the Americans with Disabilities Act. He also argues that Defendants' failures to follow prison grievance policies violated his right to due process.

Plaintiff seeks injunctive relief, together with compensatory and punitive damages.

## II.   Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the

4

reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

**A. Defendant Holmes**

Plaintiff alleges that Defendant Holmes violated Plaintiff's rights under the Eighth Amendment and the ADA, by denying him appropriate medical care and accommodations for his health conditions.

1. Claims under § 1983

Plaintiff alleges that Defendant Holmes, by ignoring Plaintiff's prior diagnoses and health conditions and by refusing to allow him necessary medical accommodations, violated Plaintiff's rights under the Eighth Amendment.

The Eighth Amendment prohibits the infliction of cruel and unusual punishment against those convicted of crimes. U.S. Const. amend. VIII. The Eighth Amendment obligates prison authorities to provide medical care to incarcerated individuals, as a failure to provide such care would be inconsistent with contemporary standards of decency. *Estelle v. Gamble*, 429 U.S. 102, 103-04 (1976). The Eighth Amendment is violated when a prison official is deliberately indifferent to the serious medical needs of a prisoner. *Id.* at 104-05; *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001).

A claim for the deprivation of adequate medical care has an objective and a subjective component. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). To satisfy the objective component, the plaintiff must allege that the medical need at issue is sufficiently serious. *Id.* In other words, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm. *Id.* The objective component of the adequate medical care test is satisfied "[w]here the seriousness of a prisoner's need[ ] for medical care is obvious even to a lay person." *Blackmore v. Kalamazoo Cty.*, 390 F.3d 890, 899 (6th Cir. 2004). The subjective component requires an inmate to show that prison officials have "a sufficiently culpable state of mind in denying medical care." *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000). Deliberate indifference "entails something more than mere negligence," but can be "satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Farmer,* 511 U.S. at 835. "[T]he official must both be aware of facts from which the

inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837.

Upon initial review, the Court concludes that Plaintiff's allegations against Defendant Holmes are sufficient to state an Eighth Amendment claim under 42 U.S.C. § 1983.

2. ADA

Title II of the ADA provides, in pertinent part, that no qualified individual with a disability shall, because of that disability, "be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." *Mingus v. Butler*, 591 F.3d 474, 481-82 (6th Cir. 2010) (citing 42 U.S.C. § 12132). Discrimination under Title II includes "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee, unless such covered entity can demonstrate that the accommodation would impose an undue hardship on the operation of the business of such covered entity[.]" 42 U.S.C. § 12112(b)(5)(A). To establish a prima facie case under the ADA for failure to accommodate a disability, the plaintiff must show that: (1) he is disabled within the meaning of the ADA; (2) he is otherwise qualified for the service, with or without reasonable accommodation; (3) the defendants knew or had reason to know of his disability; (4) he requested an accommodation; and (5) the defendants failed to provide the necessary accommodation. *Mosby-Meachem v. Memphis Light, Gas & Water Div.*, 883 F.3d 595, 603 (6th Cir. 2018).

The Supreme Court has held that Title II of the ADA applies to state prisons and inmates. *Penn. Dep't of Corr. v. Yeskey*, 524 U.S. 206, 210-12 (1998) (noting that the phrase "services, programs, or activities" in § 12132 includes recreational, medical, educational, and vocational prison programs). The proper defendant under a Title II claim is the public entity or an

7

official acting in his official capacity. *Carten v. Kent State Univ.*, 282 F.3d 391, 396-97 (6th Cir. 2002). Plaintiff therefore fails to state an individual-capacity claim against Defendant Holmes.

Plaintiff's official-capacity ADA claim against Defendant Holmes also fails to state a claim. Defendant Holmes is an employee of Corizon Health, Inc., not the MDOC or the State of Michigan. "[A] private corporation is not a public entity merely because it contracts with a public entity to provide some service." *Matthews v. Pa. Dep't of Corr.*, 613 F. App'x 163, 170 (3d Cir. 2015) (determining that Corizon Health and its employees were not public entities under the ADA) (quoting *Edison v. Douberly*, 604 F.3d 1307, 1310 (11th Cir. 2010)); *see also Phillips v. Tiona*, 508 F. App'x 737, 754 (10th Cir. 2013) (concluding that a private health provider that contracted with a state prison was not a "public entity" under the ADA); *Thompson v. Mich. Dep't of Corr.*, No. 17-10490, 2018 WL 5094078, at *2 (E.D. Mich. Aug. 10, 2018) (same). The Court therefore will dismiss Plaintiff's ADA claim against Defendant Holmes.

### B. Defendants Washington, Rewerts, Gonzalez, Winger, Becher, & Unknown Party

Plaintiff alleges that Defendants Washington, Rewerts, Winger, Becher, and Unknown Party failed to supervise their subordinates, thereby permitting violations of Plaintiff's rights under the Eighth Amendment and the ADA, and failed to follow prison policy in investigating and responding to his grievance at the various steps of the grievance policy. In addition, Plaintiff alleges that Defendant Gonzalez denied Plaintiff's request for ADA accommodations under MDOC Policy Directive 04.06.155, because Plaintiff had been designated with a disability, but instead was complaining about the quality of his medical care and treatment.

#### 1. Claims under § 1983

Plaintiff alleges that Defendants Washington, Rewerts, Gonzalez, Winger, Becher, and Unknown Party failed to supervise their employees, failed to follow prison procedures, and

improperly denied Plaintiff's grievances. He contends that the alleged failures resulted in violations of the Eighth Amendment and the Due Process Clause of the Fourteenth Amendment.

Government officials may not be held liable under § 1983 for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability. *Iqbal*, 556 U.S. at 676; *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691(1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676. "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676. A claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575-76 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. *Grinter*, 532 F.3d at 576; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004). As a consequence, to the extent that Plaintiff bases his claims against Defendants Washington, Rewerts, Gonzalez, Winger, Becher, and Unknown Party on their failures to supervise their subordinates, he fails to state a § 1983 claim.

Moreover, to the extent that Plaintiff claims that Defendants failed to comply with a prison administrative rule or policy, his allegations do not rise to the level of a constitutional violation. *Laney v. Farley*, 501 F.3d 577, 581 n.2 (6th Cir. 2007); *Brody v. City of Mason*, 250 F.3d 432, 437 (6th Cir. 2001); *Smith v. Freland*, 954 F.2d 343, 347-48 (6th Cir. 1992); *Barber v. City of Salem*, 953 F.2d 232, 240 (6th Cir. 1992); *McVeigh v. Bartlett*, No. 94-23347, 1995 WL 236687, at *1 (6th Cir. Apr. 21, 1995) (failure to follow policy directive does not rise to the level of a constitutional violation because policy directive does not create a protectible liberty interest).

9

Instead, § 1983 is addressed to remedying violations of federal law, not state law. *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 924 (1982); *Laney*, 501 F.3d at 580-81. As a consequence, no Defendant is liable under § 1983 for his failure to follow prison policy.

Further, Plaintiff has no due process right to file and pursue a prison grievance or to obtain a particular result from the grievance process. The courts repeatedly have held that there exists no constitutionally protected due process right to an effective prison grievance procedure. *See Hewitt v. Helms*, 459 U.S. 460, 467 (1983); *Walker v. Mich. Dep't of Corr.,* 128 F. App'x 441, 445 (6th Cir. 2005); *Argue v. Hofmeyer*, 80 F. App'x 427, 430 (6th Cir. 2003); *Young v. Gundy,* 30 F. App'x 568, 569-70 (6th Cir. 2002); *Carpenter v. Wilkinson,* No. 99-3562, 2000 WL 190054, at *2 (6th Cir. Feb. 7, 2000); *see also Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996); *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994) (collecting cases). Michigan law does not create a liberty interest in the grievance procedure. *See Olim v. Wakinekona,* 461 U.S. 238, 249 (1983); *Keenan v. Marker*, 23 F. App'x 405, 407 (6th Cir. 2001); *Wynn v. Wolf*, No. 93-2411, 1994 WL 105907, at *1 (6th Cir. Mar. 28, 1994). Because Plaintiff has no liberty interest in the grievance process, Defendants Washington, Rewerts, Winger, Becher, and Unknown Party did not deprive him of due process when they failed to follow the grievance process.

Finally, § 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance or other institutional complaint. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). Defendants Washington, Rewerts, Gonzalez, Winger, Becher, and Unknown Party therefore cannot be held liable for their failures to respond to Plaintiff's grievances.

For all these reasons, Plaintiff fails to state a claim under § 1983 against Defendants Washington, Rewerts, Gonzalez, Winger, Becher, and Unknown Party.

2. ADA claims

Plaintiff alleges that Defendants Washington, Rewerts, Gonzalez, Winger, Becher, and Unknown Party, acting in both their individual and official capacities, violated his rights under the ADA.

Title II of the ADA provides, in pertinent part, that no qualified individual with a disability shall, because of that disability, "be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. The ADA applies to both federal and state prisons. *Pa. Dep't of Corr. v. Yeskey*, 524 U.S. 206, 209-10 (1998).

In *United States v. Georgia*, 546 U.S. 151 (2006), the Supreme Court considered whether Title II of the ADA validly abrogated sovereign immunity for the type of claim alleged in the action. In *Georgia*, an inmate alleged that certain conduct by prison officials independently violated his Eighth Amendment rights and Title II of the ADA. 546 U.S. at 157. Without deciding the accuracy of those allegations, the Court explained that the inmate's "claims for money damages against the State under Title II were evidently based . . . on conduct that independently violated the provisions of § 1 of the Fourteenth Amendment" because the guarantee against cruel and unusual punishment has been incorporated into the Due Process Clause of the Fourteenth Amendment. *Id.* As such, the plaintiff in *Georgia* "differ[ed] from the claimants in our other cases addressing Congress's ability to abrogate [state] sovereign immunity. . . ." *Id.* (citing *Tennessee v. Lane*, 541 U.S. 509, 543 n. 4 (2004), and *Bd. of Trustees of Univ. of Ala. v. Garrett*, 531 U.S. 356, 362 (2001)). Thus, the Supreme Court held that "insofar as Title II creates a private cause of action for damages against the States for conduct that actually violates the Fourteenth Amendment, Title II validly abrogates state sovereign immunity." *Id.* at 159.

The Georgia court set forth a three-part test for determining whether the ADA properly waived sovereign immunity in a given case:

> [D]etermine . . . on a claim-by-claim basis, (1) which aspects of the State's alleged conduct violated Title II; (2) to what extent such misconduct also violated the Fourteenth Amendment; and (3) insofar as such misconduct violated Title II but did not violate the Fourteenth Amendment, whether Congress's purported abrogation of sovereign immunity as to that class of conduct is nevertheless valid.

*Id.* at 159, *quoted in Mingus v. Butler*, 591 F.3d 474, 482 (6th Cir. 2010) (discussing immunity and applying three-part test of *Georgia*).

The Court will assume at this juncture that Plaintiff's ADA claims are not barred by sovereign immunity.

As earlier discussed, the proper defendant under a Title II claim is the public entity or an official acting in his official capacity. *Carten v. Kent State Univ.*, 282 F.3d 391, 396-97 (6th Cir. 2002). To the extent that Plaintiff has sued all MDOC Defendants in their official capacities, Plaintiff's ADA claims are, for all intents and purposes, against the state of Michigan as the real party-in-interest. *See, e.g., Brotherton v. Cleveland,* 173 F.3d 552, 560-61 (6th Cir. 2010). Plaintiff's official-capacity claims against Defendants Washington, Rewerts, Gonzalez, Winger, Becher, and Unknown Party therefore are proper under the ADA. However, Plaintiff's individual-capacity ADA claims against Defendants Washington, Rewerts, Gonzalez, Winger, Becher, and Unknown Party fail to state a claim.

### 3. Duplicative claims

The courts have recognized that, where an entity is named as a defendant, official-capacity claims against employees of the entity are redundant. *See Foster v. Michigan*, 573 F. App'x 377, 390 (6th Cir. 2014) (finding official-capacity suits against defendant agency's employees superfluous where the state and agency were also named as defendants); *see also Faith Baptist Church v. Waterford Twp.*, 522 F. App'x 332, 327 (6th Cir. 2013) ("Having sued Waterford

Township, the entity for which Bedell was an agent, the suit against Bedell in his official capacity was superfluous.") (citing *Foster*); *Petty v. Cty. of Franklin*, 478 F.3d 341, 349 (6th Cir. 2007) ("To the extent that Petty's suit is against [Sheriff] Karnes in his *official* capacity, it is nothing more than a suit against Franklin County itself."), *abrogated on other grounds by Twombly,* 550 U.S. at 561-62, and *Iqbal*, 556 U.S. at 679. For similar reasons, Plaintiff's official-capacity claims against Defendants Washington, Rewerts, Gonzalez, Winger, Becher, and Unknown Party are redundant of one another, because each constitutes an identical suit against the MDOC or the State of Michigan for a violation of the ADA. *Foster*, 573 F. App'x at 390 (citing *Graham*, 473 U.S. at 165). The Court therefore will allow Plaintiff's official-capacity claims under the ADA only against Defendant Washington, as the highest ranking named official. The Court will dismiss Plaintiff's official-capacity claims against Defendants Rewerts, Gonzalez, Winger, Becher, and Unknown Party, as redundant.

## **Conclusion**

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Plaintiff's § 1983 claims against Defendants Washington, Rewerts, Gonzalez, Winger, Becher, and the unknown Director of Bureau of Healthcare Services (Unknown Party) will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court also will dismiss Plaintiff's individual-capacity ADA claims against all Defendants and Plaintiff's official-capacity ADA claims against Defendants Rewerts, Gonzalez, Winger, Becher, Holmes and the unknown Director of Bureau of Healthcare Services (Unknown Party). Plaintiff's individual-capacity § 1983 claims against Defendant Holmes and Plaintiff's official-capacity ADA claims against Defendant Washington remain in the case.

An order consistent with this opinion will be entered.

Dated:    December 20, 2019                    /s/ Paul L. Maloney
                                               Paul L. Maloney
                                               United States District Judge