UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

EDDIE SKELLETT, #183067,

   Plaintiff,          Hon. Paul L. Maloney

v.                Case No. 1:19-cv-703

HEIDI WASHINGTON, et al.,

   Defendants.
_____/

## REPORT AND RECOMMENDATION

   This matter is before the Court on Plaintiff's Motion for Summary Judgment (ECF No. 23), Defendant Holmes' Motion for Summary Judgment (ECF No. 25), and Defendant Washington's Motion for Summary Judgment (ECF No. 34). Pursuant to 28 U.S.C. § 636(b)(1)(B), the undersigned recommends that Plaintiff's motion be denied, Defendants' motions be granted, and this action terminated.

## BACKGROUND

   The following allegations are contained in Plaintiff's complaint. (ECF No. 1). In the "early 2000s" Plaintiff was suffering from inner ear damage, vertigo, loss of feeling in his right lower extremity, heart "issues," and "spots" on his lungs. In response, a doctor imposed on Plaintiff the following functional limitations: no prolonged standing, sitting, or walking; no climbing stairs; and no continuous lifting of

-1-

more than 25 pounds. In 2013, Plaintiff "lost his [right] thumb." While Plaintiff's "thumb was reattached," he continued to experience residual grip loss in his right hand.

In 2017, Plaintiff was arrested and incarcerated in the Monroe County Jail where he was permitted use of his "braces and cane." Following his 2018 incarceration with the Michigan Department of Corrections (MDOC), Plaintiff was initially provided "no stair," cotton blanket, and "extra pillow" accommodations. After Plaintiff was transferred to the Carson City Correctional Facility, however, Dr. Scott Holmes cancelled Plaintiff's accommodations. The doctor also cancelled Plaintiff's pain medication, and he reduced the dosage on another of Plaintiff's medications. Dr. Holmes also refused Plaintiff's request for a "braces and cane" accommodation. The doctor told Plaintiff that "he was not disabled[,] just getting old." Dr. Holmes' actions caused Plaintiff to experience increased pain and risk of falling.

Plaintiff subsequently filed an accommodation request pursuant to the Americans with Disabilities Act (ADA). This request was denied by the facility's ADA Coordinator on the ground that such accommodations must be issued or approved by a qualified medical professional. This determination was affirmed by the facility's warden. Plaintiff then pursued the matter through the prison grievance process without success.

Plaintiff initiated this action against Dr. Holmes, MDOC Director Heidi Washington, and several other individuals alleging, in part, violations of his Eighth Amendment right to receive adequate medical care and his rights under the ADA. At

this juncture, only two claims remain: (1) Plaintiff's denial of medical treatment claim against Dr. Holmes, and (2) Plaintiff's ADA claim against Director Washington. (ECF No. 9-10, 21). Plaintiff now moves for summary judgment. Defendants Holmes and Washington also move for summary judgment on the ground that Plaintiff has failed to properly exhaust his administrative remedies.

## SUMMARY JUDGMENT STANDARD

Summary judgment "shall" be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party moving for summary judgment can satisfy its burden by demonstrating "that the respondent, having had sufficient opportunity for discovery, has no evidence to support an essential element of his or her case." *Minadeo v. ICI Paints*, 398 F.3d 751, 761 (6th Cir. 2005). Once the moving party demonstrates that "there is an absence of evidence to support the nonmoving party's case," the non-moving party "must identify specific facts that can be established by admissible evidence, which demonstrate a genuine issue for trial." *Amini v. Oberlin College*, 440 F.3d 350, 357 (6th Cir. 2006).

While the Court must view the evidence in the light most favorable to the non-moving party, the party opposing the summary judgment motion "must do more than simply show that there is some metaphysical doubt as to the material facts." *Amini*, 440 F.3d at 357. The existence of a mere "scintilla of evidence" in support of the non-moving party's position is insufficient. *Daniels v. Woodide*, 396 F.3d 730, 734-35 (6th

Cir. 2005). The non-moving party "may not rest upon [his] mere allegations," but must instead present "significant probative evidence" establishing that "there is a genuine issue for trial." *Pack v. Damon Corp.*, 434 F.3d 810, 813-14 (6th Cir. 2006).

Moreover, the non-moving party cannot defeat a properly supported motion for summary judgment by "simply arguing that it relies solely or in part upon credibility determinations." *Fogerty v. MGM Group Holdings Corp., Inc.*, 379 F.3d 348, 353 (6th Cir. 2004). Rather, the non-moving party "must be able to point to some facts which may or will entitle him to judgment, or refute the proof of the moving party in some material portion, and . . . may not merely recite the incantation, 'Credibility,' and have a trial on the hope that a jury may disbelieve factually uncontested proof." *Id.* at 353-54. In sum, summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Daniels*, 396 F.3d at 735.

While a moving party without the burden of proof need only show that the opponent cannot sustain his burden at trial, a moving party with the burden of proof faces a "substantially higher hurdle." *Arnett v. Myers*, 281 F.3d 552, 561 (6th Cir. 2002). Where the moving party has the burden, "his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986). The Sixth Circuit has repeatedly emphasized that the party with the burden of proof "must show the record

contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it." *Arnett*, 281 F.3d at 561. Accordingly, summary judgment on a claim in favor of the party with the burden on such "is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact." *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999).

## ANALYSIS

### I. Plaintiff's Motion for Summary Judgment

Plaintiff's only remaining claims are a denial of medical treatment claim against Dr. Holmes, and an ADA claim against Director Washington. Plaintiff now moves for summary judgment as to both claims. Plaintiff has failed, however, to submit any evidence in support of his motion for summary judgment. Plaintiff has, however, submitted certain evidence with other pleadings (*see* ECF No. 5, 14, 21), which the Court has considered in support of Plaintiff's motion.

### A. Americans with Disabilities Act (ADA)

Plaintiff alleges that his rights under the ADA have been violated by the actions described herein. To prevail on his ADA claim, Plaintiff must establish: (1) he is a qualified person with a disability; (2) the MDOC is subject to the ADA; and (3) he was denied the opportunity to participate in or benefit from defendants' services, programs, or activities, or was otherwise discriminated against by defendants, by reason of his disability. *See Anderson v. City of Blue Ash*, 798 F.3d 338, 357 (6th Cir. 2015).

Even if the Court assumes that Plaintiff could prevail on the first two elements, Plaintiff has failed to present evidence that any MDOC official denied him the opportunity to participate in or benefit from any MDOC service, program, or activity, or otherwise discriminated against him by reason of his disability. Stated differently, Plaintiff has failed to satisfy his burden of presenting evidence sufficient to conclude that no reasonable juror could find other than for Plaintiff. Accordingly, the undersigned recommends that Plaintiff's motion for summary judgment be denied as to this claim.

B.  Eighth Amendment

Plaintiff alleges that Defendant Holmes denied him necessary medical treatment in violation of his Eighth Amendment rights. The Eighth Amendment's prohibition against cruel and unusual punishment applies not only to punishment imposed by the state, but also to deprivations which occur during imprisonment and are not part of the sentence imposed. *See Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Estelle v. Gamble*, 429 U.S. 97, 101-02 (1976). Accordingly, the Eighth Amendment protects against the unnecessary and wanton infliction of pain, the existence of which is evidenced by the "deliberate indifference" to an inmate's "serious medical needs." *Estelle*, 429 U.S. at 104-06; *Napier v. Madison County, Kentucky*, 238 F.3d 739, 742 (6th Cir. 2001).

The analysis by which a defendant's conduct is evaluated consists of two-steps. First, the Court must determine, objectively, whether the alleged deprivation was sufficiently serious. A "serious medical need," sufficient to implicate the Eighth Amendment, is "one that has been diagnosed by a physician as mandating treatment or

one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Harrison v. Ash*, 539 F.3d 510, 518 (6th Cir. 2008). Thus, the objective component is satisfied where a prisoner receives no treatment for a serious medical need. *See Rhinehart v. Scutt*, 894 F.3d 721, 737 (6th Cir. 2018). If, however, the prisoner "has received on-going treatment for his condition and claims that this treatment was inadequate," he must demonstrate that his care was "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *Ibid.*

If the prisoner satisfies the objective component, he must then demonstrate that the defendant possessed a sufficiently culpable state of mind:

> a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.

*Id.* at 837.

In other words, Plaintiff "must present evidence from which a trier of fact could conclude 'that the official was subjectively aware of the risk' and 'disregard[ed] that risk by failing to take reasonable measures to abate it." *Greene v. Bowles*, 361 F.3d 290, 294 (6th Cir. 2004) (citing *Farmer*, 511 U.S. at 829, 847). To satisfy this part of the analysis, Plaintiff must demonstrate that Defendant acted with "deliberateness tantamount to intent to punish." *Miller v. Calhoun County*, 408 F.3d 803, 813 (6th Cir. 2005).

While Plaintiff has submitted evidence that arguably establishes that he was suffering a serious medical need, (ECF No. 5, PageID.111-12, 136, 140-41; ECF No. 14, PageID.194-207), he has failed to present evidence that Defendant failed to reasonably respond thereto. To the extent Plaintiff simply disagrees with Defendant's medical judgment or treatment decisions, such does not implicate the Eighth Amendment. *See, e.g., Williams v. Mehra*, 186 F.3d 685, 691 (6th Cir. 1999) (citing *Estelle*, 429 U.S. at 105-06) ("[m]edical malpractice does not become a constitutional violation merely because the victim is a prisoner"); *Mingus v. Butler*, 591 F.3d 474, 480 (6th Cir. 2010) (to prevail on an Eighth Amendment denial of medical treatment claim, "the inmate must show more than negligence or the misdiagnosis of an ailment").

Again, Plaintiff has failed to satisfy his burden of presenting evidence sufficient to conclude that no reasonable juror could find other than for Plaintiff as to this claim. Accordingly, the undersigned recommends that Plaintiff's motion for summary judgment be denied as to this claim.

## II. Defendants' Motions for Summary Judgment

Defendants Washington and Holmes both assert that Plaintiff has failed to properly exhaust his remaining claims. Pursuant to 42 U.S.C. § 1997e(a), a prisoner asserting an action with respect to prison conditions under 42 U.S.C. § 1983 must first exhaust all available administrative remedies. *See Porter v. Nussle*, 534 U.S. 516, 524 (2002). Prisoners are no longer required to demonstrate exhaustion in their complaints. *See Jones v. Bock*, 549 U.S. 199, 216 (2007). Instead, failure to exhaust administrative

remedies is "an affirmative defense under the PLRA" which the defendant bears the burden of establishing. *Ibid*.

With respect to what constitutes proper exhaustion, the Supreme Court has stated that "the PLRA exhaustion requirement requires proper exhaustion" defined as "compliance with an agency's deadlines and other critical procedural rules." *Woodford v. Ngo*, 548 U.S. 81, 90-93 (2006). In *Bock*, the Court reiterated that

> Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.' The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion.

*Bock*, 549 U.S. at 218.

MDOC Policy Directive 03.02.130 articulates the applicable grievance procedures for prisoners in MDOC custody. The now current version of this Policy, which took effect on March 18, 2019, superseded the prior version which had been in effect since July 9, 2007. (MDOC Policy Directive 03.02.130 (Mar. 18, 2019). The events relevant to the present motion are governed by both versions of this Policy as such occurred both prior to and after March 18, 2019. With respect to the issues raised by Defendants' motions, however, the two policies are identical. Specifically, both versions of this Policy require that a prisoner, prior to submitting a grievance, attempt to resolve the issue with staff, unless prevented by circumstances beyond his control or the issue falls within the jurisdiction of Internal Affairs. MDOC Policy Directive 03.02.130 ¶ P (July 9, 2007); MDOC Policy Directive 03.02.130 ¶ Q (Mar. 18, 2019). The prisoner

must attempt to resolve the matter with staff within two days of becoming aware that there exists a grievable issue. (*Id.*).

If this attempt is unsuccessful (or such is inapplicable), the prisoner may submit a Step I grievance, but such must be submitted within five business days after attempting to resolve the matter with staff. MDOC Policy Directive 03.02.130 ¶ V (July 9, 2007); MDOC Policy Directive 03.02.130 ¶ W (Mar. 18, 2019). The issues asserted in a grievance "should be stated briefly but concisely" and the "[d]ates, times, places, and names of all those involved in the issue being grieved are to be included." MDOC Policy Directive 03.02.130 ¶ R (July 9, 2007); MDOC Policy Directive 03.02.130 ¶ S (Mar. 18, 2019).

If the prisoner is dissatisfied with the Step I response, or does not receive a timely response, he may appeal to Step II within ten business days of the response, or if no response was received, within ten business days after the response was due. MDOC Policy Directive 03.02.130 ¶ BB (July 9, 2007); MDOC Policy Directive 03.02.130 ¶ DD (Mar. 18, 2019). If the prisoner is dissatisfied with the Step II response, or does not receive a timely Step II response, he may appeal the matter to Step III. MDOC Policy Directive 03.02.130 ¶ FF (July 9, 2007); MDOC Policy Directive 03.02.130 ¶ HH (Mar. 18, 2019).

Defendants have submitted evidence that Plaintiff, prior to initiating the present action, pursued a single grievance, identified as Grievance DRF-19-05-988-28i, through all three steps of the grievance process. (ECF No. 25, PageID.269-77; ECF No. 35,

PageID.343-51).  Plaintiff does not dispute that this is the only grievance he pursued through all three steps of the grievance process.  Instead, Plaintiff argues that the grievance in question establishes that he properly exhausted his administrative remedies with respect to his remaining claims.

In his grievance, Plaintiff asserted that an unidentified doctor "refuses to address [his] disability issues" or provide him with appropriate care.  (ECF No. 25, PageID.275).  Plaintiff reported that the incidents giving rise to his grievance occurred on the following four dates: February 11, 2019; March 21, 2019; April 1, 2019; and April 15, 2019.  (*Id.*).  Plaintiff reported that, prior to submitting his grievance, he attempted to resolve the matter with staff on April 24, 2019.  (*Id.*).  The grievance was received by prison officials on May 3, 2019.  (*Id.*).

Plaintiff's grievance was rejected at Step I on the ground that Plaintiff "failed to attempt to resolve [the] issue with staff."  (ECF No. 25, PageID.275).  This rejection was upheld at Steps II and III of the grievance process.  (ECF No. 25, PageID.272, 274).  As noted, MDOC Policy requires prisoners, prior to filing a grievance, to attempt to resolve the issue with staff no later than two days after realizing that there exists a grievable issue.  It is evident from Plaintiff's grievance that he failed to timely comply with this requirement.

Plaintiff asserts that he attempted to resolve his issues with staff on April 24, 2019, which is nine days after the last incident giving rise to Plaintiff's grievance.  (ECF No. 25, PageID.275).  Moreover, Plaintiff has neither alleged nor presented evidence

that he was prevented by circumstances beyond his control from attempting to timely resolve this matter with staff.  Likewise, Plaintiff has neither alleged nor presented evidence that the subject matter of his grievance falls within the jurisdiction of Internal Affairs.  Finally, in response to Defendants' motions, Plaintiff has presented no *evidence*.  Instead, Plaintiff has simply submitted unsworn pleadings.

Simply put, Defendants have demonstrated that Plaintiff failed to comply with applicable MDOC grievance policy and that his grievance was rejected for such failure. Accordingly, the undersigned finds that Defendants have satisfied their burden on the affirmative defense of exhaustion of administrative remedies and, therefore, recommends that Defendants' motions for summary judgment be granted.

## CONCLUSION

For the reasons articulated herein, the undersigned recommends that Plaintiff's Motion for Summary Judgment (ECF No. 23) be denied; that Defendant Holmes' Motion for Summary Judgment (ECF No. 25) be granted; and that Defendant Washington's Motion for Summary Judgment (ECF No. 34) be granted.  The undersigned also recommends that this action terminated.  The undersigned further recommends that appeal of this matter would not be taken in good faith.  *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997); 28 U.S.C. § 1915(a)(3).

OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within fourteen days of the date of service of this notice. 28 U.S.C. § 636(b)(1)(C). Failure to file objections within the specified time waives the right to appeal the District Court's order. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir.1981).

                                                  Respectfully submitted,

Date: May 8, 2020                           /s/ Phillip J. Green
                                            PHILLIP J. GREEN
                                            United States Magistrate Judge